T.C. Summary Opinion 2007-77


UNITED STATES TAX COURT


MARY ELIZABETH CUMINGS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11623-05S.                    Filed May 21, 2007.


Mary Elizabeth Cumings, pro se.

Michael W. Lloyd, for respondent.


MARVEL, Judge:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
when the petition was filed.[1]  Pursuant to section 7463(b), the
decision to be entered is not reviewable by any other court, and

_____

    [1]All subsequent section references are to the Internal
Revenue Code, unless otherwise indicated.

this opinion shall not be treated as precedent for any other case.

This case arises from a request for relief under section 6015(f) with respect to petitioner's 2002 taxable year. Respondent determined petitioner was not entitled to any relief from joint and several liability under section 6015(f). Petitioner timely filed a petition seeking review of respondent's determination.[2] The issue for decision is whether respondent's denial of relief under section 6015(f) was an abuse of discretion.

## Background

Some of the facts have been stipulated. We incorporate the stipulated facts into our findings by this reference. Petitioner resided in Loveland, Colorado, when her petition in this case was filed.

---

[2]Respondent filed a motion to dismiss this case for lack of jurisdiction in which he contended that the Tax Court did not have jurisdiction to review respondent's denial of relief under sec. 6015(f) in nondeficiency cases. However, in response to an order to show cause dated Jan. 5, 2007, respondent concedes that the Tax Relief and Health Care Act of 2006, Pub. L. 109-432, div. C, sec. 408(a), (c), 120 Stat. 3061, 3062, amended sec. 6015(e)(1) to confer jurisdiction on the Court over stand-alone requests for equitable relief under sec. 6015(f), effective for tax liabilities arising or remaining unpaid on or after Dec. 20, 2006, and requests that his motion to dismiss for lack of jurisdiction be denied. An appropriate order denying the motion will be issued in accordance with respondent's request.

During 2002, petitioner was married to Robert Parker (Mr. Parker). In October 2002, petitioner and Mr. Parker separated, and in 2004 they divorced.

Mr. Parker was the sole proprietor of two businesses: Bob's Drywall and Parker Custom Homes. During 2002 petitioner was a laborer and a bookkeeper for Mr. Parker's drywall business.

During their marriage, petitioner and Mr. Parker maintained a joint checking account from which they both paid household bills. Among other things, petitioner made deposits into the account, wrote checks for household, business, and personal purposes, reviewed the monthly bank statements, and reconciled the checkbook. Petitioner also opened the household mail. After petitioner and Mr. Parker separated in October 2002, petitioner's access to the joint checking account apparently was restricted.

Petitioner and Mr. Parker timely filed a joint Federal income tax return for 2002. Their return reflected an unpaid income tax liability of $506.[3] The tax liability resulted from an underpayment of self-employment tax arising from Mr. Parker's sole proprietorships.

---

[3]The original tax return filed with the Internal Revenue Service (IRS) did not contain the signature page. Petitioner and Mr. Parker subsequently filed a document confirming that they had signed the return.

Petitioner and Mr. Parker's 2002 joint return was prepared by a tax return preparer. Petitioner compiled the necessary paperwork and gave it to the preparer. Petitioner faxed the completed tax return to Mr. Parker for his signature and mailing. Petitioner reviewed the return and was aware that there was a reported unpaid tax liability. Petitioner and Mr. Parker did not discuss payment of the tax liability at the time they filed their return.

On November 12, 2003, less than 1 month after petitioner and Mr. Parker filed their return, petitioner filed Form 8857, Request for Innocent Spouse Relief, and Form 12510, Questionnaire for Requesting Spouse. Petitioner requested equitable relief under section 6015(f).

On or about May 25, 2004, Tax Examiner M. Wilce (Ms. Wilce) evaluated petitioner's request for relief under section 6015(f). Among other things, Ms. Wilce determined that petitioner had filed a joint return with Mr. Parker, had filed a timely claim for relief under section 6015, had not yet paid the outstanding tax liability for the year in issue, did not prepare a fraudulent return, did not receive a fraudulent transfer of assets, and did not receive disqualified assets. However, Ms. Wilce also determined that petitioner had received a portion of the income from which the liability arose and that petitioner was ineligible for relief to the extent of the partial attribution. Ms. Wilce

did not determine at that time what portion of the underpayment was attributable to petitioner, but she did conclude that petitioner was not entitled to relief under section 6015(f).

On or about July 19, 2004, petitioner appealed Ms. Wilce's denial of relief. On or about March 30, 2005, Appeals Officer Leslie Hackmeister (Ms. Hackmeister) reviewed petitioner's appeal. In the case memorandum she prepared reflecting her review, Ms. Hackmeister stated, among other things, that the underpayment is attributable to Mr. Parker's self-employment income.

On March 30, 2005, respondent issued a Notice of Determination denying petitioner's request for relief under section 6015(f). On June 24, 2005, a petition contesting respondent's determination was filed with this Court.

## Discussion

In general, spouses who file a joint Federal income tax return are jointly and severally liable for the full amount of the tax liability shown or required to be shown on the return. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). However, a spouse may seek relief from joint and several liability under section 6015 if certain requirements are met.

In this case petitioner seeks equitable relief under section 6015(f). Section 6015(f) provides:

> SEC. 6015(f). Equitable Relief.--Under procedures prescribed by the Secretary, if--

(1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and

(2) relief is not available to such individual under subsection (b) or (c),

the Secretary may relieve such individual of such liability.[4]

This Court is a court of limited jurisdiction, and it may exercise its jurisdiction only to the extent authorized by Congress. Sec. 7442; Moore v. Commissioner, 114 T.C. 171, 175 (2000); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). On December 20, 2006, Congress amended section 6015(e)(1) to provide that this Court has jurisdiction over stand-alone section 6015(f) cases.[5] Tax Relief and Health Care Act of 2006, Pub. L. 109-432, div. C, sec. 408(a), (c), 120 Stat. 3061, 3062.[6] Respondent

---

[4]Because petitioner seeks relief from an underpayment of tax rather than understatements of tax, relief under subsecs. (b) and (c) of sec. 6015 is not available to her. Sec. 6015(b) and (c); see also Washington v. Commissioner, 120 T.C. 137, 145-147 (2003).

[5]Sec. 408(c) of the Tax Relief and Health Care Act of 2006, Pub. L. 109-432, div. C, 120 Stat. 3062, provides that "The amendments made by * * * [sec. 408] shall apply with respect to liability for taxes arising or remaining unpaid on or after [Dec. 20, 2006]."

[6]Sec. 6015(e) now provides:

SEC. 6015(e). Petition for Review by Tax Court.--

(1)  In general.--In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply, or in the
(continued...)

concedes that we have jurisdiction over this case under section 6015(e) as amended.

The Commissioner uses guidelines prescribed in Rev. Proc. 2003-61, 2003-2 C.B. 296, to determine whether a taxpayer qualifies for relief from joint and several liability under section 6015(f).[7]  We review the Commissioner's determination using an abuse of discretion standard.  See <u>Washington v. Commissioner</u>, 120 T.C. 137, 146 (2003); <u>Butler v. Commissioner</u>, <u>supra</u> at 291-292.  Under this standard of review, we defer to the Commissioner's determination unless it is arbitrary, capricious, or without sound basis in fact.  <u>Jonson v. Commissioner</u>, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003).  The taxpayer requesting section 6015(f) relief bears the burden of proof.  See Rule 142(a); <u>Jonson v. Commissioner</u>, <u>supra</u> at 113.

_____

[6](...continued)
<u>case of an individual who requests equitable relief under subsection (f)</u>--

(A)  In general.-- * * * the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section * * *  [Emphasis added.]

[7]Rev. Proc. 2003-61, 2003-2 C.B. 296, supersedes Rev. Proc. 2000-15, 2000-1 C.B. 447, effective for requests for relief filed on or after Nov. 1, 2003, and for requests for relief pending on Nov. 1, 2003, for which no preliminary determination letter has been issued as of that date.  Rev. Proc. 2003-61, secs. 6 and 7, 2003-2 C.B. at 299.

A.   Rev. Proc. 2003-61, Sec. 4.01

Before the Commissioner will consider a taxpayer's request

for relief under section 6015(f), the taxpayer must satisfy the

following seven threshold conditions listed in Rev. Proc. 2003-

61, sec. 4.01, 2003-2 C.B. at 297:

> (1) The requesting spouse filed a joint return for
> the taxable year for which he or she seeks relief.
>
> (2) Relief is not available to the requesting
> spouse under section 6015(b) or (c).
>
> (3) The requesting spouse applies for relief no
> later than two years after the date of the Service's
> first collection activity * * *
>
> (4) No assets were transferred between the spouses
> as part of a fraudulent scheme by the spouses.
>
> (5) The nonrequesting spouse did not transfer
> disqualified assets to the requesting spouse.  * * *
>
> (6) The requesting spouse did not file or fail to
> file the return with fraudulent intent.
>
> (7) The income tax liability from which the
> requesting spouse seeks relief is attributable to an
> item of the individual with whom the requesting spouse
> filed the joint return (the "nonrequesting spouse")
> * * *

Review of the administrative record, particularly Ms.

Wilce's workpaper and Ms. Hackmeister's case memorandum, confirms

that petitioner satisfies each of these conditions.  Petitioner

and Mr. Parker filed a joint Federal income tax return for 2002.

Relief is not available to petitioner under section 6015(b) or

(c) because relief under those subsections is available only with

respect to underreported liabilities; petitioner and Mr. Parker

did not underreport their tax liability on their 2002 return. Petitioner requested relief promptly after the return was filed. Ms. Wilce concluded that there was no fraudulent transfer of assets or transfer of disqualified assets to petitioner, and there is no evidence in the record supporting a different conclusion. Neither Ms. Wilce nor Ms. Hackmeister claim that petitioner and Mr. Parker filed their 2002 return with a fraudulent intent, and there is no evidence in the record supporting such an intent. Finally, Ms. Hackmeister determined that the income tax liability in question arose from Mr. Parker's sole proprietorship income, and the administrative record overwhelmingly supports her conclusion.

We conclude that petitioner has satisfied the conditions in Rev. Proc. 2003-61, sec. 4.01.

B.   Rev. Proc. 2003-61, Sec. 4.02

1.   In general

Rev. Proc. 2003-61, sec. 4.02(1), 2003-2 C.B. at 298, provides that equitable relief will ordinarily be granted as to unpaid liabilities if, in addition to the seven threshold conditions, each of the following elements is satisfied:

> (a) On the date of the request for relief, the requesting spouse is no longer married to, or is legally separated from, the nonrequesting spouse, or has not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date of the request for relief.

(b) On the date the requesting spouse signed the joint return, the requesting spouse had no knowledge or reason to know that the nonrequesting spouse would not pay the income tax liability.  The requesting spouse must establish that it was reasonable for the requesting spouse to believe that the nonrequesting spouse would pay the reported income tax liability.
* * *

(c) The requesting spouse will suffer economic hardship if the Service does not grant relief.  * * *

Petitioner and Mr. Parker were separated at the time petitioner filed her request for relief.  The parties dispute only whether petitioner had knowledge or reason to know that Mr. Parker would not pay the reported tax liability and whether petitioner would suffer economic hardship if relief were not granted.

2.  Knowledge or reason to know

This element is satisfied if the requesting spouse did not know or have reason to know when she signed the return that the taxes would not be paid.  Rev. Proc. 2003-61, sec. 4.02(1)(b). Accordingly, petitioner must establish that it was reasonable for her to believe that Mr. Parker would pay the reported liability.

Petitioner was aware of the reported tax liability when she signed the return.  Petitioner also admitted that at the time she signed the return she did not know whether Mr. Parker would pay the outstanding balance and that no funds were available at that time to pay the liability.  Petitioner was aware that Mr. Parker intended to file a petition in bankruptcy.

While we are sympathetic to petitioner's situation with her former husband, we cannot find that respondent abused his discretion in determining that petitioner had reason to know at the time she signed the return that the tax liability would not be paid.  Petitioner has not established that it was reasonable for her to believe Mr. Parker would pay the liability.  We conclude, therefore, that respondent did not abuse his discretion in determining that petitioner did not satisfy the knowledge or reason to know element of Rev. Proc. 2003-61, sec. 4.02, and thus does not qualify for equitable relief under that section of the revenue procedure.

C.   Rev. Proc. 2003-61, Sec. 4.03

Where the requesting spouse fails to qualify for relief under Rev. Proc. 2003-61, sec. 4.02, the Commissioner may nonetheless grant relief under Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298-299.  Rev. Proc. 2003-61, sec. 4.03, provides that, where the seven threshold conditions have been satisfied and the requesting spouse does not qualify for relief under Rev. Proc. 2003-61, sec. 4.02, equitable relief may be granted under section 6015(f) if, taking into account all facts and circumstances, it is inequitable to hold the requesting spouse liable.  Rev. Proc. 2003-61, sec. 4.03, contains a list of factors that the Commissioner will take into account in determining, on the facts and circumstances, whether to grant

full or partial equitable relief under section 6015(f).  As Rev. Proc. 2003-61, sec. 4.03, makes clear, no single factor is determinative in any particular case, all factors are to be considered and weighed appropriately, and the listing of factors is not intended to be exclusive.

Rev. Proc. 2003-61, sec. 4.03(2)(a), 2003-2 C.B. at 298-299, lists the following factors that the Commissioner will weigh in determining whether to grant equitable relief:

> (i) <u>Marital status</u>.  Whether the requesting spouse is separated * * * or divorced from the nonrequesting spouse.  * * *
>
> (ii) <u>Economic hardship</u>.  Whether the requesting spouse would suffer economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if the Service does not grant relief from the income tax liability.
>
> (iii) <u>Knowledge or reason to know</u>.
>
> (A) <u>Underpayment cases</u>.  * * * whether the requesting spouse did not know and had no reason to know that the nonrequesting spouse would not pay the income tax liability.
>
> *       *       *       *       *       *       *
>
> (iv) <u>Nonrequesting spouse's legal obligation</u>. Whether the nonrequesting spouse has a legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or agreement.  * * *
>
> (v) <u>Significant benefit</u>.  Whether the requesting spouse received significant benefit (beyond normal support) from the unpaid income tax liability * * *
>
> (vi) <u>Compliance with income tax laws</u>.  Whether the requesting spouse has made a good faith effort to comply with income tax laws in the taxable years

following the taxable year or years to which the request for relief relates.

Rev. Proc. 2003-61, sec. 4.03(2)(b), 2003-2 C.B. at 299, lists the following two positive factors that the Commissioner will weigh in favor of granting equitable relief:

(i) <u>Abuse</u>. Whether the nonrequesting spouse abused the requesting spouse. * * *

(ii) <u>Mental or physical health</u>. Whether the requesting spouse was in poor mental or physical health on the date the requesting spouse signed the return or at the time the requesting spouse requested relief. * * *

We consider the factors below.

## 1. Marital status

Petitioner and Mr. Parker separated in October 2002 and divorced in 2004. Both Ms. Wilce and Ms. Hackmeister admitted that this factor weighs in favor of granting relief.

## 2. Economic hardship

Rev. Proc. 2003-61, sec. 4.02(1)(c), requires respondent to apply the rules in sec. 301.6343-1(b)(4), Proced. & Admin. Regs., in making the determination of whether a requesting spouse will suffer economic hardship. Sec. 301.6343-1(b)(4), Proced. & Admin. Regs., provides that economic hardship is present if satisfaction of the tax liability in whole or in part will render a taxpayer unable to pay her reasonable basic living expenses.[8]

---

[8]Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs., lists factors that will be considered in determining a reasonable
(continued...)

In November 2003, petitioner submitted a Form 12510 to respondent. Petitioner reported on the Form 12510 monthly income of $1,710[9] and monthly expenses of $2,555. Petitioner's stated monthly expenses included housing, food, and utility expenses of $2,107, transportation expenses of $133, and other expenses of $315.

The administrative record establishes that petitioner was the sole owner of the marital residence and jointly owned a mobile home with Mr. Parker, that petitioner had significant credit card debt, and that the mortgage company holding the mortgage on the marital residence had begun foreclosure proceedings against the marital residence at the time petitioner filed her request for relief. The administrative record also establishes that although petitioner was working two jobs in 2003, she could not pay her reasonable basic living expenses without going further into debt.

Ms. Wilce determined that petitioner would not suffer economic hardship because the Internal Revenue Service (IRS)

_____

[8](...continued)
amount for basic living expenses. These factors include the taxpayer's age, employment status and history, ability to earn, number of dependents, extraordinary circumstances, and any other factor that the taxpayer claims bears on economic hardship and brings to the attention of the director.

[9]Petitioner's Form 12510 is inconsistent with IRS documents that show petitioner reported only a total of $3,339 in wage income and $255 as Schedule C, Profit or Loss From Business, income in 2003.

computer records showed that petitioner had received a Form 1099-MISC, Miscellaneous Income, reporting $127,932 of income during 2002. However, the Social Security number on the Form 1099-MISC did not match petitioner's Social Security number. Petitioner learned of Ms. Wilce's determination incorrectly attributing the income from the Form 1099-MISC to petitioner. On December 2, 2004, petitioner faxed to Ms. Hackmeister an affidavit from Ryan Scallon, the issuer of the Form 1099-MISC, stating that the form was issued to C&C Contracting and not to petitioner or Mr. Parker. Ms. Hackmeister erroneously concluded that the Social Security number referenced in the fax matched petitioner's Social Security number and that the income had not been reported on the 2002 return.

We conclude that petitioner has established that she will suffer economic hardship if she is not granted equitable relief. This factor weighs in favor of granting relief.

3. Knowledge or reason to know

For the reasons stated in our analysis of this factor under Rev. Proc. 2003-61, sec. 4.02, we conclude petitioner has failed to establish that she did not have reason to know when the return was filed that the tax liability shown as due would not be paid. This factor weighs against granting relief.

4. Nonrequesting spouse's legal obligation

Petitioner and Mr. Parker's divorce decree was not included in the record, and petitioner did not testify to the contents of it regarding the unpaid tax liability. Therefore, we cannot determine which spouse had the legal obligation under the decree to pay the outstanding tax liability. This factor is neutral.

5. Significant benefit

Both Ms. Wilce and Ms. Hackmeister admitted that petitioner did not significantly benefit from the unpaid liability, and the record does not reflect otherwise. This factor weighs in favor of granting relief.

6. Compliance with income tax laws

Respondent does not appear to contend that this factor applies, and he did not otherwise argue at trial that petitioner did not make a good faith effort to comply with her Federal income tax obligations in the years subsequent to 2002. Moreover, both Ms. Wilce and Ms. Hackmeister noted that petitioner met this requirement. Therefore, this factor weighs in favor of granting relief.

7. Abuse/mental or physical health

Neither of these positive factors applies in this case. Petitioner was not abused by Mr. Parker, and there is no evidence in the administrative record that she suffered poor mental or physical health.

8. Liability attribution

Under Rev. Proc. 2000-15, sec. 4.03(1)(f) and (2)(a), 2000-1 C.B. 447, 449, the IRS considered whether the outstanding liability was attributable to the requesting spouse or the nonrequesting spouse when determining whether equitable relief was appropriate. Although Rev. Proc. 2003-61, sec. 4.03, does not list liability attribution as one of the factors for consideration, we note that the list in Rev. Proc. 2003-61, sec. 4.03, is not exclusive.

The entire outstanding liability is attributable to self-employment taxes arising from Mr. Parker's self-employment income from two sole proprietorships. None of the self-employment income or self-employment taxes arising therefrom is attributable to petitioner. This factor weighs in favor of granting relief.

D. Conclusion

At trial, petitioner's testimony was consistent with her assertions in the Form 8857, her responses to information requests from respondent, and the statements outlined in the revenue agent's workpapers. Respondent has not challenged petitioner's truthfulness on these matters. Although we find that petitioner had reason to know that the tax liability would not likely be paid in light of Mr. Parker's intent to file a petition in bankruptcy, we nevertheless conclude that respondent abused his discretion in determining that petitioner was not

entitled to relief under section 6015(f) because all of the other factors either weigh in favor of granting relief to petitioner or are neutral.

To reflect the foregoing,

<u>An appropriate order and decision will be entered for petitioner</u>.